UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. **4:22cr440 MTS** |
| HARISH SUNKARA, | ) ) ) |
| Defendant. | ) ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Harish Sunkara, represented by defense counsel, John Davis, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1–2, the United States agrees that no further federal prosecution will be brought in this District relative to Defendant's investment fraud scheme and aggravated identity theft described in the Information, of which the Government is aware at this time. In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level

1

analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that, at the time of sentencing, the United States will request a sentence of four years of incarceration and Defendant will request a sentence of two years of incarceration.

## 3. ELEMENTS:

As to Counts One and Two, the defendant admits to knowingly violating Title 18, United States Code, Section 1028A, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant knowingly used the name of C.B.;

**Two**, the defendant knew that the name of C.B. that the defendant used belonged to another person;

**Three**, the defendant used the name of C.B. without lawful authority;

**Four**, the defendant knew that he used the name of C.B. without authority; and

**Five**, the defendant used the name of C.B. during and in relation to the crime of wire fraud.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning on September 2, 2020, and continuing through at least November 16, 2021, in the Eastern District of Missouri, and elsewhere, the defendant, **HARISH SUNKARA**, with the intent to defraud, devised a scheme and artifice to defraud investors and to obtain money and property from investors in connection with their investments in Defendant's fictitious business

2

venture with DFW Airport by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

On October 2, 2019, DFW Airport provided Defendant's company, Pace Solutions Inc., with a Notice to Proceed with work under a contract between DFW Airport and Pace Solutions. In the contract between DFW Airport and Pace Solutions, Pace Solutions agreed to provide DFW Airport with information technology training software in exchange for a $49,500.00 payment from DFW Airport. That contract was memorialized in DFW Airport contract number 7006869, which expired on October 6, 2020. DFW Airport's Notice to Proceed with work under its contract with Pace Solutions was signed by C.B., who served as a Contract Administrator for DFW Airport. DFW Airport's contract with Pace Solutions was accompanied by DFW Airport's Purchase Order for contract number 7006869. That Purchase Order reflected a $49,500.00 payment from DFW Airport to Pace Solutions, and was signed by DFW Airport's Contract Administrator, C.B., on October 7, 2019.

Beginning in September 2020, Defendant solicited potential investors to provide him with financial investments to support Defendant's fictitious business venture with DFW Airport. During Defendant's solicitations, he falsely informed potential investors that his company, Pace Solutions, had recently secured a sizeable contract with DFW Airport. To convince potential investors that his fictitious business venture with DFW Airport was real and ongoing, Defendant provided his potential investors with fictitious and fraudulent documents purportedly created by DFW Airport. The fictitious documents that Defendant sent to potential investors were purportedly connected to an ongoing contract between DFW Airport and Pace Solutions. Those fictitious documents also referenced payments that DFW Airport would make to Pace Solutions under their contract of

3

between $750,000.00 and $950,000.00. In truth and fact, the fictitious and fraudulent documents purportedly from DFW Airport that Defendant provided to potential investors had not been authorized or approved by anyone at DFW Airport. In reality, Defendant's fictitious documents were forged and altered versions of documents associated with Pace Solutions' previous contract with DFW Airport—with the listed payments to Defendant's company substantially increased and the listed dates postdated.

On September 3, 2020, to induce a financial investment, Defendant emailed a potential investor (J.A.) a fictitious Notice to Proceed with work under a purported contract between DFW Airport and Pace Solutions. The fictitious Notice to Proceed that Defendant sent to J.A. referenced the same DFW Airport contract number (7006869)—and included much of the same content—as DFW Airport's legitimate October 2019 Notice to Proceed. But Defendant's fictitious Notice to Proceed differed in at least two material respects from the legitimate Notice to Proceed. First, Defendant's fictitious Notice to Proceed included a payment amount of up to $750,000 to Defendant's company, instead of the up to $49,500 payment amount that was included in the legitimate Notice to Proceed. Second, unlike the legitimate Notice to Proceed, which was dated October 2, 2019, the date listed on Defendant's fictitious Notice to Proceed was June 15, 2020. Further, the fictitious Notice to Proceed that Defendant sent to J.A. included the signature of C.B., a real person who served as a Contract Administrator for DFW Airport. But neither C.B. nor any other employee of DFW airport signed or authorized Defendant's fictitious Notice to Proceed.

On September 4, 2020, based on Defendant's fraudulent inducement the day before, J.A. wired—via interstate wire transmission—$25,000.00 from J.A.'s Bank of America bank account (account number ending in 0495) to Defendant's Pace Solutions bank account at Regions Bank

4

(account number ending in 9899). Defendant did not spend J.A.'s investment on the fictitious business venture with DFW Airport. Instead, on or about September 10, 2020, Defendant wired $30,000 from his bank account at Regions Bank to the Cosmopolitan of Las Vegas (a casino in Las Vegas, Nevada). Based on Defendant's fraudulent inducement, J.A. wired Defendant a total of $150,000.00. Defendant did not spend any of this money on his fictitious business venture with DFW Airport.

On September 29, 2020, to induce a financial investment, Defendant emailed a potential investor (M.J.) a fictitious Purchase Order associated with a purported contract between DFW Airport and Pace Solutions. The fictitious Purchase Order that Defendant emailed M.J. referenced the same DFW Airport contract number (7006869)—and included much of the same content—as DFW Airport's legitimate October 2019 Purchase Order. But Defendant's fictitious Purchase Order differed in at least two material respects from the legitimate Purchase Order. First, Defendant's fictitious Purchase Order included a payment amount of $950,000 to Defendant's company, instead of the $49,500 payment amount that was included in the legitimate Purchase Order. Second, unlike the legitimate Purchase Order, which was dated October 7, 2019, the date listed on Defendant's fictitious Purchase Order was September 29, 2020. Further, the fictitious Purchase Order that Defendant sent to S.C. included the signature of C.B., who served as a Contract Administrator for DFW Airport. But neither C.B. nor any other employee of DFW airport signed or authorized Defendant's fictitious Purchase Order.

On October 1, 2020, based on Defendant's fraudulent inducement two days before, M.J. wired—via interstate wire transmission—$75,000.00 from M.J.'s Bank of America bank account (account number ending in 7133) to Defendant's Pace Solutions bank account at Regions Bank

5

(account number ending in 9899). Defendant did not spend M.J.'s investment on the fictitious business venture with DFW Airport. Instead, on or about that same date (October 1, 2020), Defendant wrote a $150,000 check from his bank account at Regions Bank to Wynn Las Vegas (a casino in Las Vegas, Nevada). Based on Defendant's fraudulent inducement, M.J. wired Defendant a total of $200,000.00. Defendant did not spend any of this money on his fictitious business venture with DFW Airport.

Also during October 2020, to induce a financial investment, Defendant falsely represented to a potential investor (A.J.) that Defendant secured a contract between DFW Airport and Pace Solutions. On or about October 1, 2020, based on Defendant's fraudulent inducement two days before, A.J. wired $100,000.00 from A.J.'s bank account to Defendant's Pace Solutions bank account at Regions Bank (account number ending in 9899). Defendant did not spend A.J.'s investment on the fictitious business venture with DFW Airport.

On March 19, 2021, to induce a financial investment, Defendant emailed a potential investor (S.C.) a fictitious Purchase Order associated with a purported contract between DFW Airport and Pace Solutions. The fictitious Purchase Order that Defendant emailed S.C. referenced the same DFW Airport contract number (7006869)—and included much of the same content—as DFW Airport's legitimate October 2019 Purchase Order. But Defendant's fictitious Purchase Order differed in at least two material respects from the legitimate Purchase Order. First, Defendant's fictitious Purchase Order included a payment amount of $950,000 to Defendant's company, instead of the $49,500 payment amount that was included in the legitimate Purchase Order. Second, unlike the legitimate Purchase Order, which was dated October 7, 2019, the date listed on Defendant's fictitious Purchase Order was February 11, 2021. Further, the fictitious

6

Purchase Order that Defendant sent to S.C. included the signature of C.B., who served as a Contract Administrator for DFW Airport. But neither C.B. nor any other employee of DFW airport signed or authorized Defendant's fictitious Purchase Order.

Also on March 19, 2021, based on Defendant's fraudulent inducement that same day, S.C. wired $200,000.00 from S.C.'s Bank of America bank account (account number ending in 4312) to Defendant's bank account at Bank of America (account number ending in 2376). Before receiving S.C.'s $200,000.00 wire transfer, Defendant had $161.89 in his Bank of America bank account. Defendant did not spend S.C.'s $200,000.00 investment on the fictitious business venture with DFW Airport. Instead, on or about that same date (March 19, 2021), Defendant wired $150,000 from his bank account at Bank of America to Wynn Las Vegas (a casino in Las Vegas, Nevada). Based on Defendant's fraudulent inducement, S.C. wired Defendant a total of $645,000.00. Defendant did not spend any of this money on his fictitious business venture with DFW Airport.

Over the course of his scheme and artifice to defraud, Defendant fraudulently induced investors to wire him a total of at least $1,195,000.000. Between 2020 and 2021, Defendant spent at least $5,523,401.53 at casinos in the Eastern District of Missouri and the District of Nevada.

On September 3, 2020, within the Eastern District of Missouri, Defendant did knowingly use, without lawful authority, a means of identification of another person, to wit, the name of C.B., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person, in that, in order to induce a financial investment from J.A., the defendant sent J.A. a fictitious Notice to Proceed with work under a purported contract between DFW Airport and

7

Pace Solutions, which falsely indicated that C.B. (DFW airport's Contract Administrator) authorized the fictitious Notice to Proceed, when he had not.

On March 19, 2021, within the Eastern District of Missouri, Defendant did knowingly use, without lawful authority, a means of identification of another person, to wit, the name of C.B., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person, in that, in order to induce a financial investment from S.C., the defendant sent S.C. a fictitious Purchase Order associated with a purported contract between DFW Airport and Pace Solutions, which falsely indicated that C.B. (DFW airport's Contract Administrator) authorized the fictitious Purchase Order, when he had not.

## 5. STATUTORY PENALTIES:

As to Counts One and Two, the defendant fully understands that the penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of 2 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 1 year.

## 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

8

**a. Chapter 2 Offense Conduct:** The parties agree that the guideline sentence is the term of imprisonment required by statute, under Section 2B1.6(a).

**b. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**c. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

9

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining the applicable Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

10

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an

11

order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant also agrees to provide full restitution to all victims of all charges in the Information. More specifically, the defendant agrees to provide full restitution to the individuals identified in the Information as J.A., S.C., M.J., and A.J. for the full amount of money that those victims paid the defendant in response to Defendant's fraudulent inducements described in the Information. The total amount of money paid by those victims to the defendant is $1,195,000.000.

**g.** **Forfeiture:** The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument. The defendant agrees the stipulated facts above are sufficient to support forfeiture of the assets seized during this investigation pursuant to the applicable forfeiture authorities.

The defendant agrees said property may be transferred from any other custodian into the custody of the United States for purposes of its forfeiture. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners.

12

The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

13

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

14

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

8/4/2022
Date

DEREK J. WISEMAN
Assistant United States Attorney

8/4/22
Date

HARISH SUNKARA
Defendant

8/4/22
Date

JOHN DAVIS
Attorney for Defendant

15